Troy A. Brenes, SBN 249776
BRENES LAW GROUP, P.C.
100 Spectrum Center Drive, Ste. 330
Irvine, California 92618
tbrenes@breneslawgroup.com
Telephone: (949) 397-9360
Facsimile: (949) 607-4192

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE KINNEE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TEI BIOSCIENCES INC.; INTEGRA LIFESCIENCES CORPORATION; LIFESCIENCES SALES LLC and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.: **'22CV0604 BEN AHG**<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(1) Strict Products Liability - Inadequate Warning<br>(2) Negligence<br>(3) Fraudulent Concealment<br>(4) Express Warranty |

　　Plaintiff Michelle Kinnee hereby sues defendants TEI BIOSCIENCES INC, a corporation; LIFESCIENCES CORPORATION, a corporation; LIFESCIENCES SALES LLC.; and DOES 1 through 50, and each of them, and alleges as follows:

/ / /

/ / /

/ / /

- 1 -
Complaint For Damages

## PARTIES

1. Michelle Kinnee ("Plaintiff" or "Ms. Kinnee") at all times relevant to this matter was domiciled and resided in and continues to be domiciled and reside in San Diego County, California. This case arises from the Plaintiff's implantation with a SurgiMend® hernia mesh device on April 26, 2017, which subsequently malfunctioned and caused Plaintiff to suffer pain and suffering and economic loss.

2. Defendant TEI Biosciences Inc. ("TEI"), is incorporated under the laws of Delaware and has its principal place of business in the state of New Jersey. TEI designed, manufactured and engaged in post-market surveillance regarding the Surgimend® hernia mesh device implanted in Plaintiff.

3. Defendant Integra Lifesciences Corporation ("Integra") is incorporated under the laws of Delaware and has its principal place of business in the state of New Jersey. In June 2015, Integra acquired TEI; TEI is now a wholly owned subsidiary of Integra. Upon information and belief, Integra became involved in and maintained oversight over the post-market surveillance of the Surgimend® device.

4. Defendant Integra Lifesciences Sales LLC (Integra Sales) is incorporated under the laws of Delaware and has its principal place of business in the state of New Jersey. Upon information and belief, Integra Sales was involved in the marketing and sale of Plaintiff's Surgimend device.

5. The true names, identities, or capacities, whether individual, associate, corporate or otherwise of defendants, DOES 1 through 50, inclusive, are unknown to Plaintiff who, therefore, sue said defendants by such fictitious names. When the true names, identities or capacities of said factiously designated defendants are ascertained, plaintiff will seek leave of Court to amend this complaint to insert the true names, identifies, and/or capacities of DOE defendants, together with the proper charging allegations against said DOE defendants. All references to "Defendants" hereinafter shall include TEI, Integra, Integra Sales, and Does 1 through 50.

6. Plaintiff is informed and believes, and thereon allege that each of the defendants sued herein as a DOE defendant is responsible in some manner for the acts, omissions, and conduct which proximately resulted and and/or was a substantial contributing factor to Plaintiff's injuries.

## JURISDICTION AND VENUE

7. Diversity Jurisdiction exists in this matter as Plaintiff's claims for damages exceeds the sum or value of $75,000.00 and diversity exists between Plaintiff's state of citizenship (California) and the state of citizenship for all defendants (Delaware or New Jersey).

8. Venue is proper in this district as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district. Specifically, both the implantation of the at issue medical device and the treatment associated with the device's malfunction occurred in Chula Vista, California.

## BACKGROUND

9. On June 26, 2007, TEI Biosciences Inc. ("TEI") submitted a 510k Premarket Notification to the Food and Drug Administration (FDA) to market a Class II device called the SurgiMend® Collagen Matrix for Soft Tissue Reconstruction ("Surgimend").

10. By choosing to forgo the far more strenuous premarket application process, TEI was not required to establish the device was safe and effective, but instead only had to claim that the device was substantially equivalent in design and intended use to a medical device already on the market.

11. The FDA received the Premarket Notification on July 9, 2007 and cleared Surgimend for marketing on August 6, 2007.

12. Surgimend is an acellular dermal tissue matrix derived from bovine dermis. The device is supposed to be supplied sterile, and is marketed for use to repair soft tissue weaknesses. This includes plastic and reconstructive surgery, muscle flap reinforcement, and hernia repair including abdominal, inguinal, femoral, diaphragmatic, scrotal, umbilical, and incisional hernias.

The device is supposed to act as a scaffold that is progressively integrated, remodeled, and replaced by the functional host tissue over time.

13. TEI designed, manufactured, promoted, sold, and engaged in post-market surveillance regarding the Surgimend device, including the specific device implanted in Plaintiff on April 26, 2017.

14. Upon information and belief, in or around June 2015, Integra acquired TEI, including TEI's rights and obligations relating to Surgimend. Upon information and belief, Surgimend became involved in overseeing the quality system, post-market surveillance and marketing of Surgimend after it acquired TEI in June 2015, including the Surgimend device implanted in Plaintiff.

15. Upon information and belief, Integra Sales became involved in the marketing and sales of the Surgimend after Integra acquired TEI in June 2015, including the specific device implanted in Plaintiff.

16. Defendants marketed Surgimend to physicians, including Plaintiff's prescribing physician, by representing, *inter alia*, that Surgimend:

    a. is safe and effective for hernia repair,

    b. is safer and offers clear advantages over synthetic mesh devices and other biologic mesh for hernia repair procedures;

    c. is the strongest biologic mesh on the market;

    d. does not elicit an acute or chronic foreign body inflammatory response;

    e. does not suffer degradation once implanted on the body;

    f. is guaranteed to be sterile and safe;

    g. had lower recurrence rates than other available hernia repair devices; and

    h. was an appropriate, cost-effective and suitable product for intrabdominal placement for hernia repair.

17. However, based on Defendants' own internal data from pre and post-market bench testing, animal studies, and required post-market surveillance investigations into reported adverse events, Defendants knew or should have known that these statements were untrue.

18. Based on Defendants' own internal data from pre and post-market bench testing, animal studies, and required post-market surveillance investigations into reported adverse events, all of which occurred before the Surgimend implanted in Plaintiff was distributed, Defendants knew or should have known that the design of Surgimend was not reasonably safe for numerous reasons including, *inter alia*, the following:

    i. the device can and does degrade or disintegrate when used in its intended manner;

    j. the device creates a high risk of injury to the bowel, including bowel blockage, bowel perforation, and need for bowel resection, when used in its intended manner;

    k. the device does in fact cause inflammatory reactions;

    l. The recurrence and complications rates associated with Surgimend were substantially higher than other comparable devices;

    m. The device was not manufactured in a manner or with a sufficient quality processes and validation to ensure the device was sterile;

    n. The device is not as safe and effective as alternative hernia repair options; and

    o. The small pore size of the device rendered it more likely to cause and/or harbor infection and negative inflammatory response;

19. From on or about October 9, 2018 through November 2, 2018, the FDA inspected a TEI manufacturing facility located at 7 Elkins Street in Boston, Massachusetts. Upon information and belief, this facility was used to manufacture Surgimend devices, or component product that goes in the device. The FDA found numerous violations of the FDA quality system regulations, including but not limited to, the following:

    p. Failing to validate the process used to manufacture extracellular bovine matrix;

q. Failure to adequately demonstrate bacterial endotoxin testing;

r. Failure to establish and maintain procedure to prevent contamination of equipment or product by substances that could reasonably expect to have adverse effect on product quality;

s. Failure to perform routine microbial testing on bioburden recovered from the water system used in manufacturing the product, which would identify presence of bacterial contamination;

t. Failure to establish and maintain procedures to adequately control environmental conditions, where environmental conditions could reasonably be expected to have an adverse effect on product quality; and

u. Failure to establish and maintain procedures for verifying or validating the corrective and preventive action, to ensure that such action is effective and does not adversely affect the finished device.

The FDA noted, that these deficiencies "demonstrate a systemic failure of your firm's quality systems."

20. Upon information and belief Defendants failed to comply with the FDA application and reporting requirements.

21. Upon information and belief, Defendants manipulated, altered, skewed, slanted, misrepresented, and/or falsified pre-clinical and/or clinical studies to bolster the perceived performance of Surgimend.

22. Upon information and belief, Defendants paid doctors, surgeons, physicians, and/or clinicians to promote Surgimend, but did not disclose the above-described risk information.

23. Defendants failed to properly investigate and disclose adverse event reports to the FDA and other regulatory agencies worldwide.

24. Defendants failed to implement adequate procedures and systems to report, track, and evaluate complaints and adverse events.

25. Defendants failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of the Surgimend.

26. Defendants provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using Surgimend for the purpose of increasing sales. By so doing, Defendants caused the dissemination of inadequate and misleading information to patients, including Plaintiff.

27. The Surgimend was implanted in Plaintiff in an intended and reasonably foreseeable manner.

28. The Surgimend implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendants, and in the condition directed by the Defendants.

29. On April 26, 2017, Plaintiff was implanted with a Surgimend, lot number 1603038, reference number 606-300-016, for ventral hernia repair.

30. Plaintiff subsequently required surgery on April 28, 2020 due to complications from the Surgimend. These complications included, *inter alia*, bowel injury, bowel blockage, bowel perforation, severe inflammatory response, and pain. The mesh had become entwined with and eroded into Plaintiff's bowel. These complications were so severe that the surgeon required over 5 hours of surgery time and described it as one of the worst cases he had ever seen in his career. Postoperatively, Plaintiff suffered severe pain, among other complications, and was not released from the hospital until May 5, 2020.

31. Plaintiff continues to experience pain and suffering from these complications including, distress and anxiety, disfigurement, difficulties with bowel movements, and economic loss.

32. Both the April 26, 2017 implantation and April 28, 2020 surgery were performed at Sharp Chula Vista Medical Center.

**COUNT I:**
**STRICT PRODUCTS LIABILITY — INADEQUATE WARNING**
(Against all Defendants)

33. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

34. Defendants, including DOES 1 through 50, and each of them, designed, manufactured or distributed the Surgimend implanted in Plaintiff.

35. Defendants, including DOES 1 through 50, and each of them, also engaged in post-market surveillance, quality control, marketing, and distribution of the Surgimend implanted in Plaintiff.

36. At the time the Surgimend implanted in Plaintiff was manufactured by Defendants, including DOES 1 through 50, Defendants knew or it was knowable that the Surgimend posed a significant and higher risk of failure than other mesh implants, including for recurrence; degradation or disintegration; bowel injury such as bowel blockage, bowel perforation, or bowel adhesions; inflammatory response; and that these failures were resulting in serious patient injuries.

37. Defendants further knew that their claims regarding the safety and efficacy of the Surgimend, including the following, were not true:

    v. Surgimend is safe and effective for hernia repair,

    w. Surgimend is safer and offers clear advantages over synthetic mesh devices and other biologic mesh for hernia repair procedures;

    x. Surgimend is the strongest biologic mesh on the market;

    y. Surgimend does not elicit an acute or chronic foreign body inflammatory response;

    z. Surgimend does not suffer degradation once implanted on the body;

    aa. Surgimend is guaranteed to be sterile and safe;

      bb. Surgimend had lower recurrence rates than other available hernia repair devices; and

      cc. Surgimend was an appropriate, cost-effective and suitable product for intrabdominal placement for hernia repair.

38. Prior to distributing the Surgimend implanted in Plaintiff, Defendants knew from internal testing and their post-market investigations that the device:

      dd. can and does degrade or disintegrate when used in its intended manner;

      ee. creates a high risk of injury to the bowel, including bowel blockage, bowel perforation, and need for bowel resection, when used in its intended manner;

      ff. does in fact cause inflammatory reactions;

      gg. suffers recurrence and complications rates substantially higher than other comparable devices;

      hh. was not manufactured in a manner or with a sufficient quality processes and validation to ensure the device was sterile;

      ii. is not as safe and effective as alternative hernia repair options; and

      jj. has a small pore size that rendered it more likely to cause and/or harbor infection and negative inflammatory response;

39. Of particular concern with the Surgimend is that Defendants marketed the device as being safe and effective for placement in the intrabdominal space. However, unlike many alternative devices, the device did not contain any design feature to prevent the mesh from becoming entwined with and eroding into the bowel. Defendants knew that absent any design mechanism to prevent the mesh from adhering to the bowel that the Surgimend was not reasonably safe to be deployed intraabdominally, as it would be highly likely to cause severe bowel injuries such as bowel perforation, bowel blockages, and severe adhesions to bowel.

40. At the time the Surgimend implanted in Plaintiff was manufactured by Defendants, Defendants, including DOES 1 through 50, and each of them, knew or it was knowable to them that the Surgimend did not improve patient outcomes, and that the longer the mesh was left implanted increased the likelihood of device failure and resulting injury.

41. Defendants did not adequately disclose the above-described risk/benefit information to Plaintiff or her prescribing physicians.

42. Ordinary consumers, including Plaintiff and her prescribing physician(s), would not and could not have recognized or discovered the potential risks and side effects of the device, as set forth herein.

43. Defendants, including DOES 1 through 50, failed to provide adequate warnings or instructions for use to Plaintiff or her prescribing physicians regarding the above-described risks and side-effects of the Surgimend, whether as to existence of the risk, its likelihood, severity, or the comparative risk to other products.

44. The Surgimend warnings, labels, and instructions for use provided by Defendants to Plaintiff and her prescribing physicians were inaccurate, misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated the Surgimend.

45. The Surgimend implanted in Plaintiff was expected to and did reach Plaintiff and his prescribing physicians without substantial change in condition, labeling, or warnings from when it was manufactured, distributed, and sold by Defendants.

46. Plaintiff and his physicians used the Surgimend implanted in Plaintiff in the manner in which they were intended to be used, making such use reasonably foreseeable to Defendants.

47. The above described failure by Defendants to provide adequate warnings to Plaintiff or her prescribing physicians was a substantial factor in causing Plaintiff's injuries and damages, as described herein. In other words, the physicians who prescribed the Surgimend to Plaintiff would not have prescribed and used the Surgimend in Plaintiff had Defendants not failed to provide

adequate warnings, as described above. Alternatively, if Plaintiff's prescribing physicians would still have agreed to use the mesh, they would have passed this risk information on to the Plaintiff as part of the informed consent process, and Plaintiff would not have consented to the use of the device.

WHEREFORE, Plaintiff demands judgment against Defendants as hereinafter set forth.

## COUNT II:
## NEGLIGENCE
### (Against all Defendants)

48. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

49. Prior to, on, and after the date the Surgimend was implanted in Plaintiff, and at all relevant times, Defendants, including DOES 1 through 50, and each of them, designed, manufactured, distributed or conducted post-market surveillance of the Surgimend for use in the United States.

50. Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, sale and post-market surveillance of the Surgimend so as to avoid exposing others to foreseeable and unreasonable risks of harm. This includes a duty to add feasible safety measures, or to recall or update warnings when reasonably necessary.

51. At the time the Surgimend implanted in Plaintiff was distributed by Defendants, they knew or reasonably should have known that the Surgimend was dangerous or was likely to be dangerous when used in an intended or reasonably foreseeable manner.

52. At the time the Surgimend implanted in Plaintiff was manufactured, Defendants knew or reasonably should have known:

    kk. the device can and does degrade or disintegrate when used in its intended manner;

    ll. the device creates a high risk of injury to the bowel, including bowel blockage, bowel perforation, and need for bowel resection, when used in its intended manner as there is no safety mechanism designed into the device, unlike other available devices, to allow for safe placement next to the bowel;

    mm.   the device causes inflammatory reactions;

    nn. The recurrence and complications rates associated with Surgimend were substantially higher than other comparable devices;

    oo. The device was not manufactured in a manner or with a sufficient quality processes and validation to ensure the device was sterile;

    pp. The device is not as safe and effective as alternative hernia repair options; and

    qq. The small pore size of the device rendered it more likely to cause and/or harbor infection and negative inflammatory response;

53. At the time the Surgimend implanted in Plaintiff was distributed by Defendants, they knew or should have known that consumers of the Surgimend, including Plaintiff's prescribing physicians, would not realize the danger associated with using the devices for their intended or reasonably foreseeable use.

54. Defendants breached their to duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, sale and post-market surveillance of the Surgimend implanted in Plaintiff in, among other ways, the following acts and omissions:

    i.   Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

    ii.   Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices and treatment options available for the same purpose;

    iii.   Failing to incorporate additional safety mechanisms into the devices design or in product labeling, like other available devices, that would reduce the risk associated with intrabdominal placement;

    iv.   Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

  v.  Failing to use reasonable care to warn or instruct, including pre and post-sale, Plaintiff, his prescribing physicians, or the general health care community about the Surgimend mesh substantially dangerous condition or about facts making the products likely to be dangerous;

  vi.  Failing to recall, retrofit, or provide adequate notice of such actions to Plaintiff or her health providers.

  vii.  Failing to perform reasonable pre and post-market testing of the Surgimend to determine whether or not the products were safe for their intended use;

  viii.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Surgimend;

  ix.  Advertising, marketing and recommending the use of the Surgimend, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of these polypropylene mesh products;

  x.  Representing that the Surgimend was safe for its intended use when, in fact, Defendants knew and should have known the products were not safe for their intended uses;

  xi.  Continuing to manufacture and sell the Surgimend with the knowledge that said products were dangerous and not reasonably safe, and failing to comply with good manufacturing regulations;

  xii.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Surgimend so as to avoid the risk of serious harm associated with the use of these filter systems;

  xiii.  Failing to establish an adequate quality assurance program used in the design and manufacture of the Surgimend.

  xiv.  Failing to establish and maintain and adequate post-market surveillance program.

55. A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

56. Defendants' negligence prior to, on, and after the date of implantation of the device in Plaintiff was a substantial factor in causing Plaintiff's injuries and damages, as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants, including DOES 1 through 50, and each of them, as hereinafter set forth.

## COUNT III:
## FRAUDULENT CONCEALMENT
### (Against All Defendants)

57. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

58. In marketing and selling the device, Defendants concealed material facts from Plaintiff and her prescribing physicians. These material facts include, but are not limited to, the following:

   a. That the devices were unsafe and not fit when used for their intended purpose or in a reasonably foreseeable manner;

   b. That the devices posed dangerous health risks in excess of those associated with the use of other similar devices;

   c. That there were additional side effects related to implantation and use of these devices that were not accurately and completely reflected in the warnings associated with the devices;

   d. That the devices was not adequately tested to withstand normal placement within the human body.

   e. That these can and do degrade or disintegrate when used in their intended manner;

   f. That these devices create a high risk of injury to the bowel, including bowel blockage, bowel perforation, and need for bowel resection, when used in their intended manner;

   g. That these devices do in fact cause inflammatory reactions;

   h. That these devices suffer recurrence and complications rates substantially higher than other comparable devices;

   i. That these devices were not manufactured in a manner or with a sufficient quality processes and validation to ensure the device was sterile;

   j. That the device is not as safe and effective as alternative hernia repair options; and

  k. The device has a small pore size that renders it more likely to cause and/or harbor infection and negative inflammatory response;

59. Plaintiff and her healthcare providers were not aware of these and other facts concealed by Defendants.

60. Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff and her prescribing physicians, but instead they concealed them. Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

61. In concealing these and other facts, Defendants intended to deceive Plaintiff and her prescribing physicians as to the true facts regarding the safety and efficacy of the Surgimend mesh.

62. Plaintiff's healthcare providers did in fact review the product inserts Defendants distributed with the Surgimend mesh prior to prescribing the product to Plaintiff.

63. Plaintiff's health care providers reviewed and relied on these product inserts for the purpose of making a risk benefit assessment as to whether or not to prescribe the Surgimend mesh. Plaintiff's health care providers also relied on these materials in determining what risk information to pass on to Plaintiff as part of the informed consent process.

64. Plaintiff and his healthcare providers reasonably and justifiably relied on Defendants the above-described concealments by Defendants.

65. This concealment by Defendants of material facts from Plaintiff and her healthcare providers was a substantial factor in Plaintiff's health care providers deciding to use the devices and in Plaintiff's agreement to be implanted with the devices. Absent such concealment, either Plaintiff's prescribing physcians would not have prescribed the device, would have used it in a different manner, or would have passed this information on to Plaintiff who would have declined the use of the device. Thus, Defendants' fraudulent concealment was a substantial factor in causing Plaintiff's injuries and damages, as described herein.

WHEREFORE, Plaintiff demands judgment against defendants, including DOES 1 through 50, and each of them, as hereinafter set forth.

### COUNT IV
### EXPRESS WARRANTY
### (Against all Defendants)

66. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

67. Prior to, on, and after the dates during which Plaintiff was implanted with this hernia mesh device, and at all relevant times, Defendants, including DOES 1 through 50, had knowledge of the purpose for which the Surgimend was to be used, including intraabdominal placement, and represented the device to be in all respects safe, effective, and proper for such purpose. Said warranties and representations were made to Plaintiff and her treating physicians. Plaintiff and her treating physicians relied on said warranties and representations in deciding to use the device.

68. Defendants, including DOES 1 through 50, used packaging inserts and media advertisements to represent to the medical community and consumers, including plaintiff and her health care providers, that the Surgimend: was safe for its intended use; did not pose serious health hazards when used appropriately; was safer and more effective than alternative mesh devices; had been adequately tested for its intended use; and would not cause injury after implantation.

69. Defendants breached the above-described express warranties and representations in that the Surgimend did not conform to these express warranties and representations.

70. Prior to, on, and after the dates during which Plaintiff and her physicians purchased and used these devices, Defendants were on notice of the Surgimend mesh's inability to conform to these express warranties.

71. Defendants' breach of said express warranties and representations prior to, on, and after the date Plaintiff and his physicians purchased and used the devices was a substantial factor in causing Plaintiff's injuries and damages, as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants as hereinafter set forth

### PUNITIVE DAMAGES ALLEGATIONS

**(Against all Defendants)**

72.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

73.  Defendants sold their products to healthcare providers throughout the United States without doing adequate testing to ensure that the products were reasonably safe for their intended use.

74.  Despite knowing the Surgimend had higher reported rates of recurrence, other complications, and patient injury than other devices indicate for hernia repair, Defendants falsely represented the Surgimend was safer and more effective than synthetic and other biomesh repair options.

75.  Despite knowing the Surgimend had no safety mechanism designed into the device to prevent severe adhesions to the bowel, Defendants marketed the device as being safe and effective for intrabdominal placement.

76.  Even as Defendants became aware of ever-growing evidence that the Surgimend was not safe for intrabdominal placement given the high risk of bowel injury posed by the design of the mesh as the device has no barrier designed to prevent adhesions, Defendants continued to market the Surgimend for intrabdominal placement.

77.  Defendants ignored reports from patients and healthcare providers throughout the United States and elsewhere of the products' failures to perform as intended, which lead to the severe debilitating injuries suffered by the Plaintiff.  Rather than doing adequate testing to determine the cause of these injuries, or to rule out the products' designs or the processes by which the products are manufactured as the cause of these injuries, Defendants chose instead to continue to market and see the products as safe and effective.

78. Defendants knew the products were unreasonably dangerous in light of their risks of failure resulting in pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of the products, as well as other severe injuries which are permanent and lasting in nature.

79. Defendants withheld material information from the medical community and the public in general, including the Plaintiff, regarding the safety and efficacy of the product.

80. Defendants knew and recklessly disregarded the fact that the products caused debilitating and potentially life-altering complications with greater frequency than feasible alternative methods and/or products.

81. Defendants misstated and misrepresented data, and continue to misrepresent data, so as to minimize the perceived risk of injuries caused by the products.

82. Notwithstanding the foregoing, Defendants continue to aggressively market the products to consumers, without disclosing the true risks associated with the products.

83. Defendants knew of the products' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff.

84. Defendants continue to conceal and/or fail to disclose to the public, including the Plaintiff, the serious complications associated with the use of the products, to ensure continued and increased sales.

85. Defendants conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

/ / /

/ / /

**PRAYER FOR DAMAGES**

**WHEREFORE**, Plaintiff prays for relief against all Defendants including, Does 1 through 50, inclusive, on the entire complaint, as follows:

  a.  General damages according to proof at the time of trial;

  b.  Special (economic) damages, including without limitation, past and future medical expenses and past and future lost wages according to proof at time of trial.

  c.  Pre-judgment and post-judgment interest in the maximum amount allowed by the laws of the State of California;

  d.  Costs of suit incurred herein;

  e.  Punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future;

  f.  For such further and other relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Respectfully Submitted,

DATED: April 28, 2022            BRENES LAW GROUP, P.C.

_____
Troy A. Brenes
Attorney for Plaintiff